Fulton County Daily Report
Vol. 8, No. 24
Copyright 2006 by American Lawyer Media, ALM, LLC

August 24, 2006

# NUCLEAR SUITS MAY BRING DAMAGES FALLOUT

NEWS

By MARCIA COYLE, National Law Journal

**THE FEDERAL GOVERNMENT** may soon face the first wave of damages awards in its long-running, multibillion-dollar breach-of-contract litigation with the nation's utilities over disposal of spent nuclear fuel.

The U.S. Court of Federal Claims has damages decisions pending in six of the more than 60 originally filed cases, which, by some industry estimates, could cost the government more than $50 billion.

Some judges in those six completed cases have indicated that they will be ruling imminently, which is good news to utilities and their lawyers, some of whom have waited as long as five years just for resolution of fully briefed summary judgment motions.

But even if damages are forthcoming, lawyers, like veteran government contract litigator Jerry Stouck of the Washington office of Greenberg Traurig, harbor no illusions that the end of this litigation saga, begun for some in 1998, is in sight.

'The Court of Federal Claims does a reasonably good job of getting the work done and resolving small disputes in government contracts and federal personnel cases, but when it comes to these big megacases, like Winstar [breach-of-contract suits against the government by savings and loan associations] and spent nuclear fuel, it's a very long and slow and hard row to fight the federal government,' he said.

Stouck, who is handling four of the most recently completed six cases, said that he believes the utilities will 'mostly win,' and 'big numbers are coming up pretty soon.' But he also said that there is no doubt the government will appeal the damages awards.

'What's the downside for the government?' he asked. 'There is no prejudgment interest charged. What does the government have to lose? Sure, there will be appeals.'

Steven L. Schooner, senior associate dean for academic affairs and co-director of the government procurement law program at George Washington University Law School, agrees with Stouck.

'The Court of Federal Claims isn't going to do anything other than tee it up for the [U.S. Court of Appeals for the Federal Circuit],' he said. 'Could it go to the Supreme Court? Given the high stakes, maybe. You're talking about tens of billions of dollars.'

## Finding a home

The spent nuclear fuel lawsuits charged that the federal government breached contracts entered into with utilities in

1983 under the Nuclear Waste Policy Act of 1982. Under the act, the Department of Energy (DOE) was to begin picking up the utilities' spent nuclear fuel on Jan. 31, 1998, in return for payments by the utilities into the Nuclear Waste Fund for construction of a permanent waste site.

As a nuclear reactor operates, uranium is used up in the fission process that creates energy to generate electricity. Fission byproducts build up and eventually interfere with efficiency until the fuel can no longer produce energy. At that point, the fuel is 'spent.' But it continues to emit radiation, so it must be stored in basins of water or dry storage vaults or containers until its radiation drops to safe levels. That can take thousands of years.

On Jan. 31, 1998, there was no permanent repository for the spent fuel, and the federal government did not begin, as the contract required, to pick up that fuel. Many of the utilities were forced to build temporary on-site storage facilities for the spent fuel-the costs of which are now the damages being sought in their litigation with the government.

The utilities already have paid more than $15 billion into the federal Nuclear Waste Fund for a permanent waste site. The government has designated Yucca Mountain in Nevada as the repository, but that site has been tied up in politics and litigation for years.

In July, DOE announced a new schedule for Yucca Mountain, projecting that the site will begin to accept nuclear waste in March 2017 instead of 2010, the previous prediction.

'We would think the 2017 date is extremely optimistic,' said Jay E. Silberg of the Washington office of Pillsbury Winthrop Shaw Pittman, a nuclear attorney who has represented 19 utilities in the spent fuel litigation.

The 2017 date makes no allowances for the longer licensing hearing that will be required by the Yucca site, Silberg said, nor for related lawsuits.

'We know the Nevada people are very inventive with reasons why the project shouldn't go forward,' he said.

In fact, the state of Nevada is in three federal courts right now on issues related to Yucca Mountain and anticipates additional lawsuits in the coming months, said Robert Loux, executive director of the Nevada Agency for Nuclear Projects.

'I honestly believe DOE is so incompetent and the site is so bad they'll never make progress on Yucca Mountain,' predicted Loux. 'Most people believe Yucca Mountain is a dead site or will be.'

Repeated calls for comment to the DOE public affairs office were not returned.

Although a final resting place for the spent nuclear fuel is in doubt, some issues have been resolved in the litigation.

The Federal Circuit ruled in 2000 that the government did breach the contract. But the breach is a partial one, according to the court, and damages are limited to past damages.

'These contracts are still in force; the utilities are still paying fees into the Nuclear Waste Fund, and we all continue to expect and desire performance by DOE even though it's delayed,' explained Stouck.

'Since there is the possibility of performance tomorrow, the courts said, 'If we award damages for the next 10 years and then DOE actually performs in five years, you might end up with windfall. Let's not speculate about when they will perform,' ' he said.

Three New England utilities represented by Stouck initially sought about $500 million in damages out to 2010, the earliest date that DOE predicted Yucca Mountain would be ready until its latest prediction last month. The damages are the cost of constructing and then operating the on-site storage facilities.

But the 'past' in terms of damages was defined as through 2002, said Stouck, whose three New England utilities,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

along with Pacific Gas & Electric (PG&E), are awaiting damages rulings. For the three New England utilities, he sought about $200 million and about $92 million for PG&E through 2004.

'We're just at the beginning of construction for PG&E and we already know there is another $50 million in costs through 2006,' he said.

But it is also clear that the utilities can come back for additional damages if delay continues, said Pillsbury's Silberg, an issue resolved by his representation of Indiana Michigan Power Co.

Most of the damages sought in that case, he said, were future damages. The company had not yet built its dry storage facility, Silberg said.

'We now have a clear right to go back and ask for those damages,' he said. And Silberg said it is also clear now that damages awarded must be paid from the government's judgment fund, not from the Nuclear Waste Fund as the government argued.

'It was not appropriate for the utilities, in essence, to pay their own damages,' he said. 'The court agreed with us.'

Of the 66 cases filed, six are awaiting damages decisions; seven have trial dates, most in 2007; about 40 have been stayed or are in various stages of discovery; nine have been dismissed; about three have settled; and two have closed after final judgments.

The only damage award made thus far has been in the suit brought by the Tennessee Valley Authority. The suit was filed in 2001 and sought $35.8 million in damages for the construction of dry storage facilities at TVA's Sequoyah and Browns Ferry nuclear plants. The court last January awarded $34.9 million for damages through 2004.

The government filed an appeal but withdrew it. Lawyers speculate the government did not pursue the appeal because it did not want a governmentwide ruling on an issue in the case peculiar to TVA: whether quasi-governmental agencies like TVA have standing to sue the government.

Two years ago, Exelon Corp. and its subsidiaries, Exelon Generation Co., Commonwealth Edison Co. and AmerGen Energy Co., settled their suits with the government.

Under the settlement agreement, Exelon was to receive $80 million immediately in gross reimbursements for storage costs already incurred, with additional amounts reimbursed annually for future costs. If a national repository opens by 2010, which now is unlikely, gross reimbursements to Exelon would eventually total about $300 million.

Settlements are rare in these megacases, said Stouck. 'In the private sector, they settle. Both sides want to resolve that,' he said. 'That doesn't happen in Winstar or spent fuel, partly because of the magnitude, partly because of the precedential value of the early cases, and also the government has no real incentive to settle because no prejudgment interest is charged.'

Key legal issues relating to the contract remain unresolved, such as how much waste the government was to begin picking up in 1998, and the schedule of pickup.

The government, according to Silberg, Stouck and others, never gives up on certain issues even when they have been resolved at the circuit level. It will reassert an unsuccessful argument into one case sometimes three years after it has lost it in another.

The Court of Federal Claims is partly to blame for the government's ability to do that, said Schooner of George Washington University.

'One of the problems with the Court of Federal Claims is it is not a disciplined court,' said Schooner, an admitted critic of the court.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

'In Winstar's first big damages case, Judge [Loren] Smith wrote a long, detailed opinion so everyone, he said, can follow his lead and Judge [Robert] Hodges came out a week later and said he was doing the exact opposite.' Schooner added. 'I think it's hard to say 'this court' with a straight face. You have a couple dozen independent contractors there.'

But Stouck, Silberg and the other spent nuclear fuel lawyers are clearly prepared for the long haul.

Even if the government's ultimate liability, as suggested by DOE, is only $7 billion, Stouck wonders if that will impress anyone within government to solve the waste problem or whether it will have an impact on the renaissance of nuclear power in this country.

'Frankly, I'm a cynic,' he said. 'I would hope so, but I don't know.'

Silberg is more of a fatalist.

'I attended my first high-level waste conference in 1979,' he recalled. 'I've spent 30 years trying to move these issues forward. This is the nuclear waste program after all. We never would have anticipated it would have taken this long with this litigation. Unfortunately, there are some judicial forums that take a very long time.'

Marcia Coyle writes for The National Law Journal, an affiliate publication of the Daily Report. She can be reached at mcoyle@alm.com.

8/24/2006 FULTONDAILY

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.