EXECUTION COPY

# DUANE ARNOLD ENERGY CENTER

# ASSET SALE AGREEMENT

BY AND AMONG

INTERSTATE POWER AND LIGHT COMPANY,
AS SELLER

FPL ENERGY DUANE ARNOLD, LLC, AS BUYER

AND

FPL GROUP CAPITAL INC., AS BUYER'S PARENT

DATED AS OF JULY 2, 2005

(d) The Parties shall not take any actions that would cause the actual Tax consequences of the transactions contemplated by this Agreement to differ from or be inconsistent with the Requested Rulings set forth in Section 6.17.

(e) Seller shall cause the Trustee of Seller's Decommissioning Funds to pay final expenses for trustee and investment management fees and other administrative expenses of Seller's Decommissioning Funds to the extent practicable before the Closing Date. Seller shall cause the Trustee of Seller's Decommissioning Funds to notify Buyer in writing of any such Decommissioning Fund expenses due on or after the Closing Date. Buyer agrees to direct the trustee of Buyer's Decommissioning Funds to pay the Decommissioning Fund expenses identified in the preceding sentence to the extent not paid before the Closing Date. Buyer agrees to ensure that its trust agreements allow for the payment of such expenses.

6.13. Spent Nuclear Fuel Fees.

(a) Except as provided in the third sentence of this paragraph and in Sections 2.1 and 2.3, between the date hereof and the Closing Date, and at all times thereafter, Seller will remain liable, to the extent of Seller's Percentage Share in the DAEC Assets, for all Spent Nuclear Fuel Fees and any other fees associated with electricity generated at DAEC and sold prior to the Closing Date, and Buyer shall have no Liability or responsibility therefor. Buyer shall pay and discharge all Spent Nuclear Fuel Fees and any other fees associated with electricity generated at DAEC and sold from and after the Closing Date, and Seller shall have no Liability or responsibility therefor. On the Closing Date, Buyer shall assume title to, and responsibility for the management, storage, removal, transportation and disposal of all of Seller's interest in the Spent Nuclear Fuel of DAEC. Pursuant to Section 302(b)(3) of the Nuclear Waste Policy Act (42 U.S.C. Section 10222(b)(3)), Seller shall assign to Buyer its undivided rights, duties, title and interest in and to the Standard Spent Fuel Disposal Contract, including, without limitation, the right to prosecute any and all damage claims, whenever incurred, arising under such contract, and shall provide the required notice to the Department of Energy of the assignment of the Standard Spent Fuel Disposal Contract to Buyer within ninety (90) days of Closing, such notice to be in a form reasonably acceptable to Seller and Buyer and to include a copy of this Agreement therewith.

(b) Prior to Closing, Seller shall use Commercially Reasonable Efforts to preserve all rights relating to the Department of Energy Claim for the benefit of Seller and Buyer. As of the Closing Date, Buyer shall assume all of the rights and duties to the Standard Spent Fuel Disposal Contract, including but not limited to the right and obligation, using Commercially Reasonable Efforts, to pursue and recover damages, whenever incurred, resulting from the Department of Energy Claim. In the event that Buyer shall recover any form of monetary relief (including but not limited to monetary damages or relief which is reasonably calculable from economic obligations) as a direct or indirect result of the Department of Energy Claim arising out of the Department of Energy's failure to commence the acceptance, removal, transportation and/or disposal of Spent Nuclear Fuel pursuant to the Standard Spent Fuel Disposal Contract, Buyer shall: (i) be reimbursed for any reasonable and documented costs, fees (including, without limitation, attorney, consultant, engineer and expert fees) and expenses related to the prosecution of the Department of Energy Claim; (ii) pay to Seller the first Ten Million Dollars ($10,000,000) of any remaining monetary relief; (iii) pay to Seller fifty percent

(50%) of any monetary relief in excess of the first Ten Million Dollars ($10,000,000) up to a cap of a total recovery by Seller of Twenty-One Million Dollars ($21,000,000); and (iv) retain for Buyer fifty percent (50%) of any monetary relief in excess of Ten Million Dollars ($10,000,000) and one hundred percent (100%) of any monetary relief in excess of Twenty-One Million Dollars ($21,000,000). In the event a court of competent jurisdiction finally concludes that a claim or claims is not assignable hereunder, then Seller will retain and prosecute such claim or claims using Commercially Reasonable Efforts.

6.14. Department of Energy Decontamination and Decommissioning Fees.

Seller will continue to pay Seller's Percentage Share of all Department of Energy Decontamination and Decommissioning Fees relating to Nuclear Fuel purchased and consumed at DAEC prior to the Closing Date, including but not limited to all annual Special Assessment invoices to be issued after the Closing Date by the Department of Energy, as contemplated by its regulations at 10 C.F.R. Part 766 implementing Sections 1801, 1802, and 1803 of the Atomic Energy Act.

6.15. Cooperation Relating to Insurance and Price-Anderson Act.

Until the Closing, Seller will maintain, or cause to be maintained, in effect (a) insurance in amounts and against such risks and losses as is customary in the commercial nuclear power industry and (b) not less than the level of property damage and liability insurance for the Facilities as in effect on the date hereof. Seller shall cooperate with Buyer's efforts to obtain insurance, including insurance required under the Price-Anderson Act or other Nuclear Laws with respect to Seller's interest in the DAEC Assets. In addition, subject to Buyer's written commitment to satisfy its indemnification obligations under Section 8.1(a), Seller agrees to use Commercially Reasonable Efforts to assist Buyer in making any claims against pre-Closing insurance policies that may provide coverage related to Assumed Liabilities and Obligations. Buyer agrees to indemnify Seller for its reasonable out-of-pocket expenses incurred in providing such assistance and cooperation and not to take any action which shall adversely affect any residual rights of Seller in such insurance policies.

6.16. Release of Seller.

Buyer shall use Commercially Reasonable Efforts to support Seller's efforts to obtain a written release of Seller effective as of the Closing with respect to obligations arising on or after the Closing Date under any of the Seller's Agreements, Fuel Contracts or Non-material Contracts assigned to Buyer hereunder.

6.17. Private Letter Ruling.

The Parties agree to cooperate in good faith in the preparation and joint filing of the private letter ruling request(s) to be made by Buyer and Seller in order to obtain the Requested Rulings. Buyer and Seller shall obtain prior to the Closing Date one or more private letter ruling(s) from the IRS determining that (i) the transfer of assets from the Seller's Qualified Decommissioning Funds to the Buyer's Qualified Decommissioning Fund is a disposition that is treated as satisfying the requirements of Treas. Reg. 1.468A-6(b) pursuant to the IRS's exercise of discretion under Treas. Reg. 1.468A-6(g)(1), and accordingly (ii) none of Seller, Buyer nor